UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
KATHLEEN O'HARA,

                  Plaintiff,

        -against-

BOARD OF COOPERATIVE EDUCATIONAL
SERVICES, SOUTHERN WESTCHESTER;
HAROLD COLES, JAMES GRATTO, DAVID
PULLEY, LISA SCHUCHMAN, and JOHN KNIGHT,
in their official and individual capacities.

                  Defendants.
-----------------------------------------------------------------------X

DOCKET NO.: 18-CV-8502
(KMK)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Sean O'Hara
**Leeds Brown Law, P.C.**
*Attorneys for Plaintiff*
One Old Country Road, Suite 347
Carle Place, New York  11514
(516) 873-9550

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ............................................................................................1

STANDARD OF REVIEW ...........................................................................................7

ARGUMENT

    I.     PLAINTIFF HAS RAISED ACTIONABLE CLAIMS UNDER THE ADA ...............9

    II.    PLAINTIFF'S ADA and ADA HOSTILE WORK ENVIRONMENT CLAIMS ......16

    III.   PLAINTIFF'S RETALIATION CLAIMS SHOULD NOT BE DISMISSED............18

    IV.   PLAINTIFF'S CONSTITUTIONAL CLAIMS .........................................................19

    V.    THE INDIVIDUAL DEFENDANTS ARE LIABLE...................................................23

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

Page

STATUTES

29 C.F.R. § 1630.2 (i)(1)(i) ................................................................................... 10, 12

42 U.S.C. § 12102(4)(A). T§ 12102(1) ....................................................................... 10

42 U.S.C. § 1983 ........................................................................ 1, 3, 19, 20, 21, 22, 24

42 U.S.C. 2000e et seq. ................................................................................................ 1

FED. R. CIV. P. 12(b)(6) ...................................................................................... 1, 7, 8


CASE LAW

2004 Stuart Moldaw Trust v. XE LIFE, LLC,
642 F. Supp. 2d 226 (S.D.N.Y. 2009) ........................................................................ 8

Abdu Brinson v. Delta Airlines Inc.,
239 F.2d 456 (2d Cir. 2001) ....................................................................................... 15

Acheampong v. N. Y. City Health & Hosps. Corp.,
2015 U.S. Dist. LEXIS 37933 (S.D.N.Y. 2015) ....................................................... 16

Adickes v. S.H. Kress & Co.,
398 U.S. 144 (1970) ................................................................................................... 22

Arar v. Ashcroft,
585 F.3d 559 (2d Cir. 2009) ........................................................................................ 7

Arteaga v. State of New York,
72 N.Y.2d 212 (N.Y. 1988) ....................................................................................... 25

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ............................................................................................... 7, 13

Barella v. Vill. of Freeport,
16 F. Supp. 3d 144 (E.D.N.Y. 2014) ....................................................................... 20

Baroor v. New York City Dept. of Educ.,
2009 U.S. Dist. LEXIS 29319 (E.D.N.Y. Apr. 3, 2009) ......................................... 20

Beaumont v. Cablevision Sys. Corp.,
2012 U.S. Dist. LEXIS 49686, 2012 WL 1158802 (E.D.N.Y. Apr. 9, 2012) ............ 3

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ............................................................................................ 7, 8, 9

Birkholz v. City of New York,
2012 WL 580522 (E.D.N.Y. 2012) .................................................................... 19

Boykin v. KeyCorp,
521 F.3d 202 (2d Cir. 2008) ................................................................................ 8

Breeding v. Cendant Corp.,
2003 U.S. Dist. LEXIS 6558 (S.D.N.Y. 2003) ............................................... 17

Brennan v. Metropolitan Opera Ass'n,
192 F.3d 310 (2d Cir. 1999) .............................................................................. 17

Brown v. Castleton College,
09-CV-1, 2009 WL 3248106 (D. Vt. Oct. 10, 2009) ....................................... 8

Cavanaugh v. Doherty,
243 A.D.2d 92 (3d Dept. 1998) ......................................................................... 24

Chambers v. TRM Copy Centers Corp.,
43 F.3d 29 (2d Cir. 1994) ............................................................................. 9, 14

Chance v. Armstrong,
143 F.3d 698 (2d Cir. 1998) ............................................................................... 8

City of Canton v. Harris,
489 U.S. 378 (1989) ........................................................................................... 23

Colwell v. Suffolk County Police Dep't.,
158 F.3d 635 (2d Cir.1998) ............................................................................... 10

Cornejo v. Bell,
592 F.3d 121 (2d Cir. 2010) .............................................................................. 19

Cruz v. Coach Stores, Inc.,
202 F.3d 560 (2d Cir. 2000) ......................................................................... 15, 17

Davis v. New York State Office of Mental Health,
2009 WL 5178440 (E.D.N.Y. Dec. 31, 2009) ................................................. 21

Deravin v. Kerik,
335 F.3d 195 (2d Cir. 2003) ............................................................................... 8

DiLegge v. Gleason,
131 F. Supp. 2d 520 (S.D.N.Y. 2001) .............................................................. 23

Dister v. Continental Group, Inc.,
859 F.2d 1108 (2d Cir. 1988) ....................................................................... 15, 16

iii

Dortz v. City of New York,
904 F. Supp. 127 (S.D.N.Y. 1995) ................................................................................. 14, 22

Fasan v. McRoberts Protective Agency, Inc.,
2015 U.S. Dist. LEXIS 35158 (E.D.N.Y. 2015) ............................................................ 10, 11

Felix v. N.Y. City Transit Auth.,
154 F. Supp. 2d 640 (S.D.N.Y. 2001) ................................................................................ 12

Ferreira v. Town of E. Hampton,
2014 WL 5637882 (E.D.N.Y. Nov. 4, 2014) ...................................................................... 20

Fierro v. New York City Dep't of Educ.,
994 F. Supp. 2d 581 (S.D.N.Y. 2014) ................................................................................ 21

G.I. Home Dev. Corp. v. Weis,
07-CV-4115, 2009 U.S. Dist. LEXIS 29345 (E.D.N.Y. Mar. 31, 2009) ...................................... 8

Gad-Tadros v. Bessemer Venture Partners,
326 F. Supp. 2d 417 (E.D.N.Y. 2004) .................................................................................. 8

Galabya v. N.Y.C. Bd. of Educ.,
202 F.3d 636 (2d Cir. 2000) ............................................................................................ 13

Glaser v. Gap Inc.,
994 F. Supp. 2d 569 (S.D.N.Y. 2014) ................................................................................ 12

Graham v. Watertown City Sch. Dist.,
2011 WL 1344149 (N.D.N.Y. Apr.8, 2011) ........................................................................ 21

Grant v. N.Y. State Office for People with Developmental Disabilities,
2013 U.S. Dist. LEXIS 107565 (E.D.N.Y. July 30, 2013) ...................................................... 19

Greenway v. Buffalo Hilton Hotel,
143 F.3d 47 (2d Cir.1998) .................................................................................................. 9

Guardino v. Vill. of Scarsdale Police Dep't,
815 F. Supp. 2d 643 (S.D.N.Y. 2011) ................................................................................ 11

Hamm v. Farney,
2014 U.S. Dist. LEXIS 119883 (N.D.N.Y. 2014) ................................................................ 11

Harlow v. Fitzgerald,
457 U.S. 800 (1982) ........................................................................................................ 23

Harris v. Forklift Sys.,
510 U.S. 17 (1993) .......................................................................................................... 16

Harris v. Mills,
572 F.3d 66 (2d Cir. 2009) ................................................................................................. 7

Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.,
198 F.3d 68 (2d Cir. 1999)..........................................................................................................9

Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC,
470 F. Supp. 2d 345 (S.D.N.Y. 2007)........................................................................................3

James v. Bauet,
09 Civ. 609, 2009 WL 3817458 (S.D.N.Y. Nov. 11, 2009). ......................................................7

Jamison v. Chapman,
2009 U.S. Dist. LEXIS 104059 (N.D.N.Y. 2009) ....................................................................23

Keating v. Gaffney,
182 F. Supp. 2d 278 (E.D.N.Y., 2001) ....................................................................................18

Kerman v. City of New York,
374 F.3d 93 (2d Cir. 2004) ......................................................................................................25

Knorr v. Pepsico Food Servs., Inc.,
1999 U.S. Dist. LEXIS 4829 (N.D.N.Y. 1999) ........................................................................12

Krasner v. HSH Nordbank AG,
680 F. Supp. 2d 502 (S.D.N.Y. 2010)........................................................................................3

Kravitz v. Police Dept. of City of Hudson,
285 A.D.2d 716 (3d Dept. 2001) ..............................................................................................24

Liu v. New York City Police Dept.,
216 A.D.2d 67 (1st Dept. 1995)................................................................................................24

Lore v. City of Syracuse,
670 F.3d 127 (2d Cir. 2012) ..............................................................................................24, 25

Mandell v. County of Suffolk & John Gallagher,
316 F.3d 368 (2d Cir. 2003)......................................................................................................16

Maresco v. Evans Chemetics,
964 F.2d 106 (2d Cir. 1992)......................................................................................................15

McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973)....................................................................................................................9

McMahon v. N.Y.C. Bd. of Educ.,
2006 U.S. Dist. LEXIS 89627 (E.D.N.Y. 2006) ........................................................................1

Meritor Sav. Bank, FSB v. Vinson,
477 U.S. 57 (1986)....................................................................................................................16

Monell v. Department of Soc. Serv. of the City of New York,
436 U.S. 658 (1978)..................................................................................................................22

Myers v. Camden Cent. Sch. Dist.,
2012 U.S. Dist. LEXIS 99127 (N.D.N.Y July 17, 2012) ........................................................................ 20

Negron v. City of New York,
2011 WL 4737068 (E.D.N.Y. Sept. 14, 2011) ..................................................................................... 21

Norton v. Town of Islip,
378 Fed. Appx. 85 (2d Cir. 2010) ...................................................................................................... 24

Norton v. Town of Islip,
04-CV-3079, 2013 WL 84896 (E.D.N.Y. Jan. 7, 2013) .................................................................. 24, 25

O'Neill v. Hernandez,
No. 08 Civ.1689(KMW)(RLE) 2009 WL 860647 (E.D.N.Y. Mar. 31, 2009) ........................................ 21

Ramos v. City of New York,
No. 96 Civ. 3787 (DLC), 1997 U.S. Dist. LEXIS 10538, 1997 WL 410493 (S.D.N.Y. July 22, 1997) ...... 3

Reeves v. Sanderson Plumbing Products, Inc.,
530 U.S. 133 (2000) .......................................................................................................................... 15

Reynolds v. Giuliani,
506 F.3d 183 (2d Cir. 2007) ............................................................................................................... 22

Richardson v. Selsky,
5 F.3d 616 (2d Cir. 1993) ................................................................................................................... 23

Riedinger v. D'Amicantino,
974 F. Supp. 322 (S.D.N.Y. 1997) ................................................................................................. 14, 22

Robinson v. 12 Lofts Realty, Inc.,
610 F.2d 1032 (2d Cir. 1979) ............................................................................................................... 8

Rogers v. Roosevelt Union Free Sch. Dist.,
2012 WL 6163130 (E.D.N.Y. Dec. 7, 2012) aff'd, 553 F. App'x 88 (2d Cir. 2014)................................. 21

Rosen v. City of New York,
667 F.Supp.2d 355 (S.D.N.Y. 2009)................................................................................................... 25

Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,
183 F.3d 155 (2d Cir. 1999)............................................................................................................... 18

Schmitt v. City of New York,
2018 U.S. Dist. LEXIS 187382 (E.D.N.Y. 2018) ................................................................................ 11

Schwapp v. Town of Avon,
118 F.3d 106 (2d Cir. 1997)............................................................................................................... 17

Sorlucco v. New York City Police Department,
971 F.2d 864 (2d Cir. 1992)............................................................................................................... 22

Summa v. Hofstra University,
703 F.3d 115 (2d Cir. 2013).......................................................................................... 18

Sussle v. Sirina Protection Sys. Corp.,
269 F. Supp. 2d 285 (S.D.N.Y. 2003)........................................................................... 10

Tanvir v. New York City Health & Hospitals Corp.,
480 F. App'x 620 (2d Cir. 2012)................................................................................... 16

Terry v. Ashcroft,
336 F.3d 128 (2d Cir. 2003).......................................................................................... 13

Thompson v. ABVI Goodwill Servs.,
531 F. App'x 160 (2d Cir. 2013) .................................................................................... 8

Torres v. Pisano,
116 F.3d 625 (2d Cir. 1997).......................................................................................... 18

Vega v. Hempstead Union Free Sch. Dist, et al.,
801 F.3d 72 (2d Cir. 2015).......................................................................................... 8, 9

Washington v. County of Rockland,
373 F.3d 310 (2d Cir. 2004).......................................................................................... 20

Weissman v. Dawn Joy Fashions, Inc.,
214 F.3d 244 (2d Cir. 2000).......................................................................................... 18

Whidbee v. Garzarelli Food Specialties, Inc.,
223 F.3d 62 (2d Cir. 2000)............................................................................................ 18

Wilson v. Layne,
526 U.S. 603 (1999)....................................................................................................... 24

Workman v. Frito-Lay, Inc.,
165 F.3d 460 (6th Cir. 1999)......................................................................................... 11

Young v. United Parcel Service, Inc.,
135 S. Ct. 1338 (2015) .................................................................................................. 10

## PRELIMINARY STATEMENT

Kathleen O'Hara ("Plaintiff") commenced this action on September 18, 2018, after having previously filed administrative charges with the New York State Division of Human Rights, cross-filed with the Equal Employment Opportunity Commission, on March 3, 2017. The claims are based on Defendants' ((Board of Cooperative Educational Services, Southern Westchester (hereinafter "SWBOCES"), Harold Coles ("Coles"), James Gratto ("Gratto"), Lisa Schuchman ("Schuchman"), and John Knight ("Knight")(referenced hereinafter by name or as the "Individual Defendants")) violations of the Fourteenth Amendment to the United States Constitution (as enforced by 42 U.S.C. § 1983); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., the Americans with Disabilities Act, 42 U.S.C. 12111, et seq., and any other cause of action which can be inferred from the facts. Defendants have moved to dismiss the Second Amended Complaint ("SAC") pursuant to FED. R. CIV. P. 12(b)(6). However, the SAC states claims for relief that are both plausible and timely, requiring the motion be denied.

## STATEMENT OF FACTS[1]

**History of Harassment**

Though brought prior to the actionable period, the history of harassment experienced by Plaintiff, and her actions in opposition, are relevant to understanding the timely acts of discrimination, failure to engage with policies and practices intended to investigate complaints of discrimination, and ultimately, retaliation which led to economic damage to O'Hara.[2]

---

[1] For a full recitation of the facts as asserted, please see the Second Amended Complaint (Dkt. 31), which is attached as Exhibit A to the Declaration of Karen C. Rudnicki as submitted with Defendants' motion.

[2] See McMahon v. N.Y.C. Bd. of Educ., 2006 U.S. Dist. LEXIS 89627, at *30 (E.D.N.Y. 2006) (holding that allegations that "cannot provide independent grounds for relief…may be considered as relevant background evidence that could lead a rational jury to find a causal link between the protected activity and the actionable adverse acts.").

Plaintiff's opposition to workplace misconduct began in or around January 2013, when she complained about suffering multiple fractures, concussions, and other physical assaults from students at SWBOCES' Rye Lake Campus. (SAC ¶ 30-32). Following her submission of Line of Duty Injury Forms, Plaintiff complained to Supervisor Will Guterman ("Guterman"), but then experienced an increasingly heavy caseload, beyond that which her own Assistant Director, Michael Schulman, had already acknowledged as being unbalanced the prior year. (SAC ¶ 33-35). Due to lack of feedback, Plaintiff brought her complaints concerning scheduling, as well as harassment by Guterman, to the attention of Assistant Superintendent Sheila McGuinness, as well as Superintendent Coles, who was also the District's Title IX representative. With no action taken to alleviate the complaints, Plaintiff again met with Superintendent Coles in June 2013, but again, experienced only an increasingly heavy caseload, and an increase in students being moved in and out of her care. (SAC ¶ 35-38). No corrective action was taken; instead, Plaintiff suffered another concussion from a student attack, and was forced to take medical leave in Fall 2014, placing SWBOCES on notice of her injuries and noticing her employer of her diagnosis with Post-Concussion Syndrome. (SAC ¶ 42-44).

During the 2014/15 School Year, and continuing through her employment with SWBOCES, Plaintiff was made aware that during weekly meetings attended by her new supervisor, Assistant Director Schuchman, as well as Assistant Superintendent Gratto, and new Title IX/EEOC Compliance Officer Knight, as well as the building administration of principals throughout SWBOCES. (SAC ¶ 41). In these meetings, Plaintiff's health, frequent sickness, taking of sick leave, and their purported hardship, were negatively and publicly discussed, without corrective action. (SAC ¶ 41).

Upon her return from her concussion medical leave in Winter 2014, Plaintiff discovered

she was being assigned to a service schedule that exceeded a 250-minute maximum, and would potentially result in students receiving substandard care. She took this complaint to Assistant Director Schuchman in December 2014, and mere weeks later, on or around December 22, 2014, Assistant Superintendent Pulley met with Plaintiff concerning these very issues, but used language threatening Plaintiff with penalties including termination. (SAC ¶ 45-47). In January 2015, Plaintiff then took these complaints, including complaints that Assistant Superintendent Pulley had threatened her, and was subjecting her to workplace bullying[3], to Superintendent Coles. (SAC ¶ 52-53). Again, she received no aid, but instead was assigned even more students. (SAC ¶ 55). In May 2015, Plaintiff again complained to Assistant Superintendent Gratto concerning ongoing harassment and workplace bullying, but was told she needed to bring union representation, normally required for disciplinary matters, to any meeting, and no further actions to investigate were taken by Assistant Superintendents Gratto or Pulley. (SAC ¶ 56-58).

**Actionable Period Pursuant to Section 1983**

During Fall 2015, Plaintiff was subject to an involuntary transfer, and was sent to the Rye Lake SWBOCES campus, which was the home to her prior history of significant workplace trauma and injuries, including broken bones and concussions, and diagnosis with Post-Concussion Syndrome. (SAC ¶ 30-32; 44). Unsurprisingly, this caused Plaintiff significant workplace stress and anxiety, and she experienced physical manifestations, causing repeated cardiology visits due to chest pains, mitral valve prolapse, and heart issues, occurring in November and December 2015.

---

[3] An employee "need not have explicitly used the words 'discrimination' . . . to afford his complaints protected activity status." <u>Krasner v. HSH Nordbank AG</u>, 680 F. Supp. 2d 502, 521 (S.D.N.Y. 2010); <u>see also</u>, e.g., <u>Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC</u>, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007); <u>Ramos v. City of New York</u>, No. 96 Civ. 3787 (DLC), 1997 U.S. Dist. LEXIS 10538, 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997) (an employee need not use any "magic words" to engage in protected activity). See <u>Beaumont v. Cablevision Sys. Corp.</u>, 2012 U.S. Dist. LEXIS 49686, 2012 WL 1158802, at *16 (E.D.N.Y. Apr. 9, 2012).

(SAC ¶ 60-61). Additionally, Plaintiff now began suffering severe intestinal distress, including ulcers, which required medical care and sick leave. (SAC ¶ 62-63). Now, and continuing throughout her continued employment at SWBOCES, Plaintiff was experiencing, and requiring treatment for, stomach pain caused by gastritis, ulcers, and Irritable Bowl Syndrome, and chest pain caused by mitral valve prolapse, causing her to be attended to by cardiologists and gastroenterologists. (SAC ¶ 62, 65).

On February 11, 2016, Plaintiff contacted Superintendent Coles, Assistant Superintendent Gratto, and Assistant Director Schuchman, and complained about a "hostile environment" which was causing Plaintiff "agitation and stress," and which was resulting in her need to take a sick day. (SAC ¶ 73-74). Mere weeks later, on March 4, 2016, Schuchman issued Plaintiff a Counseling Memorandum, to which Plaintiff again alleged she was being subjected to a "hostile work environment" and discussed workplace bullying. (SAC ¶ 78-79). That day, Plaintiff contacted Title IX Officer Knight, who told her that Assistant Superintendent Gratto was handling her complaints. (SAC ¶ 80). Plaintiff followed up again, on March 7, 2016, and made further complaints of harassment to Assistant Superintend Gratto, telling him that her health was being impacted, and demanding action to stop the harassment. (SAC ¶ 81). That day, or shortly thereafter, Plaintiff saw a gastroenterologist due to physical manifestations of her gastrointestinal conditions, including IBS, GERD, and gastritis. (SAC ¶ 82).

On March 18, 2016, Plaintiff responded to Schuchman's Counseling Memorandum, and complained that she was being penalized as a result of becoming sick, and that workplace stress was negatively impacting her health. (SAC ¶ 83). Days later, on March 23, 2016, Plaintiff had to take a sick day due to severe stomach pain, caused by IBS, GERD, and gastritis. (SAC ¶ 84). Fed up again at the lack of response from SWBOCES, on March 28, 2016, Plaintiff submitted a

complaint concerning SWBOCES' Dignity for All Act. (SAC ¶ 85). Though this complaint should have been investigated immediately, again, no action was taken. (SAC ¶ 85-86).

After having informed her supervisors, Plaintiff had an endoscopy performed on April 11, 2016, and was found to have ulcers. (SAC ¶ 87). Despite prior notice to her employer, Plaintiff was written up for her use of a sick day, and issued another Counseling Memorandum. (SAC ¶ 87, 89-90). The next day, on April 12, 2016, Plaintiff contacted Assistant Superintendent Gratto, and asked for follow-up on her complaints. In an inverse from what was discussed on March 4, 2016, Title IX Officer Knight now contacted Plaintiff, and said that he, rather than Gratto, would be handling the complaint. (SAC ¶ 80, 88). At this point, Plaintiff had been complaining about harassment from supervisors, and its impact on her health, repeatedly and continuously since January 2015, and without response. (SAC ¶ 52-53; 80, 88). After being told that she'd be given classroom observations on back-to-back days upon her return from sick leave, on April 21, 2016, Plaintiff complained to Superintendent Coles, and Title IX Officer Knight, and complained about "retaliation" that was "affecting [Plaintiff's] health." (SAC ¶ 94-98; 100).

On April 26, 2016, Plaintiff's doctor recommended medical leave for at least three to four weeks, based on "abdominal pain and the appearance of esophageal ulcers and gastritis," which were not relieved "in spite of multiple medications." (SAC ¶ 102, Decl. O'Hara Ex. 6). On April 29, 2016, Title IX Officer Knight sent a letter to Plaintiff's home, via certified mail, more than a month after her March 28, 2016 Dignity for All complaint. (SAC ¶ 85; 103). Despite Plaintiff's medical leave, this letter referred to Plaintiff's medical situation as being "absent from work for approximately four weeks." (Decl. O'Hara Ex. 7).

**Actionable Period Pursuant to Title VII and ADA**

On June 8, 2016, Title IX Officer Knight sent Plaintiff a letter advising that he had been informed of her return to work date of June 13, 2016, and that both he, and a SWBOCES attorney, would meet with Plaintiff "before June 24, 2016". (Decl. O'Hara Ex. 8). On June 13, 2016, Plaintiff returned from medical leave. (SAC ¶ 105). That day, Plaintiff contacted Superintendent Coles, Title IX Officer Knight, and Assistant Superintendent Gratto, and requested that she be permitted to have legal counsel present at the meeting with Title IX Officer Knight and SWBOCES' attorney. (SAC ¶ 107). On June 16, 2016, by hand-delivery, Knight informed Plaintiff that she would not be permitted to have counsel attend the meeting. (SAC ¶ 108, Decl. O'Hara Ex. 9).

Following her June 13, 2016 return, Plaintiff experienced disparate treatment from her direct supervisor, Assistant Director Schuchman, in that she was experiencing unnecessary observations from Schuchman, which could not have had any benefit for SWBOCES in terms of approving student sessions provided by Plaintiff. (SAC ¶ 106). In addition to the daily observations by Schuchman, who was one of the alleged bad actors in the Dignity for All Act complaint, Plaintiff also experienced daily observations by Marlane Amelio, who was also named in the complaint. (SAC ¶ 109-111). On June 15, 2016, and again on June 17, 2016, Plaintiff complained to Knight, Superintendent Coles, and Assistant Superintendent Gratto, and requested relief from harassment and referenced negative impacts on her health. (SAC ¶ 111-113). Without relief, on June 22, 2016, Plaintiff resigned from her tenured position of nearly thirty years, due to constant harassment and retaliation. (SAC ¶ 113). Despite her resignation, and the lack of instruction which could derive from any such Counseling Memorandum, Schuchman proceeded to issue Plaintiff such a disciplinary action on the last day of school, June 24, 2016, with a purported date of complaint reaching back to April 12, 2016. (SAC ¶ 114-115). Despite holding tenure, and making

6

a consistent income for decades, Plaintiff was forced from secure employment due to repeated threats to her health, corroborated by her doctors to be caused by workplace stress and anxiety, and experienced considerable financial loss, continuing to date despite continued efforts to mitigate. (Decl. O'Hara ¶ 14-24).

## STANDARD OF REVIEW

**Rule 12(b)(6) Standard**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. As the Second Circuit has explained:

> "we apply a 'plausibility standard,' which is guided by '[t]wo working principles,' First, although "a court must accept as true all of the allegations contained in a complaint," that 'tenet' 'is inapplicable to legal conclusions,' and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'

Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009) (internal citations omitted).

The test is whether the specific factual allegations are sufficient "to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555. The traditional requirements that the Court "draw all reasonable inferences in the Plaintiff's favor and accepts as true the facts alleged in the complaint" remain, even in the wake of Twombly and Iqbal. Arar v. Ashcroft, 585 F.3d 559, 567 (2d Cir. 2009); James v. Bauet, 09 Civ. 609, 2009 WL 3817458, *3 (S.D.N.Y. Nov. 11, 2009).

Notably, even under this standard, "Rule 12(b)(6) does not countenance dismissals based on a court's disbelief of a complaint's factual allegations." Twombly, 550 U.S. at 566; see also 2004 Stuart Moldaw Trust v. XE LIFE, LLC, 642 F. Supp. 2d 226, 240 (S.D.N.Y. 2009); Brown v. Castleton College, 09-CV-1, 2009 WL 3248106, *2 (D. Vt. Oct. 10, 2009). "The test is whether the Plaintiff is entitled to offer evidence to support [her] claim, not whether [s]he is ultimately likely to prevail." G.I. Home Dev. Corp. v. Weis, 07-CV-4115, 2009 U.S. Dist. LEXIS 29345, at *7 (E.D.N.Y. Mar. 31, 2009) (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)). "The pleading requirements in discrimination cases are very lenient, even *de minimus*." Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003) (citation omitted). As set forth below, Plaintiff's claims against Defendants should not be dismissed because the SAC alleges sufficient facts from which the Court can infer that Defendants are liable for their misconduct

In an employment discrimination case, a Plaintiff need not establish each element of a *prima facie* claim in her Complaint. See Thompson v. ABVI Goodwill Servs., 531 F. App'x 160, 161 (2d Cir. 2013). A Plaintiff need only allege facts to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). This is satisfied by offering "bits and pieces of evidence" – a 'mosaic'" – that give rise to a "minimal inference of discriminatory motivation." See Vega v. Hempstead Union Free Sch. Dist, et al., 801 F.3d 72, 86 (2d Cir. 2015); see also Gad-Tadros v. Bessemer Venture Partners, 326 F. Supp. 2d 417, 424 (E.D.N.Y. 2004) (motion to dismiss denied where complaint gave defendants notice of the discriminatory acts). In making a plausibility determination of discrimination, courts "must be mindful of the 'elusive' nature of intentional discrimination," Vega at 86, as "clever men may easily conceal their motivations." Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032, 1037 (2d

Cir. 1979). As demonstrated herein, Plaintiff has alleged facts that plausibly raise inferences of adverse actions and discriminatory motives, which is all that Iqbal/Twombly and Vega require.

## ARGUMENT

### I.   PLAINTIFF HAS RAISED ACTIONABLE CLAIMS UNDER THE ADA

In analyzing a discriminatory discharge claim under the ADA, courts utilize the burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir.1998) (applying McDonnell Douglas to ADA claim). Under McDonnell Douglas, the Plaintiff bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994) .

To establish a *prima facie* ADA claim, Plaintiff must show by a preponderance that (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified, with or without reasonable accommodation; and (4) she suffered adverse employment action because of disability. Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999). Once the Plaintiff satisfies the *prima facie* test, the burden shifts to defendant to offer a legitimate and nondiscriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802.

Here, Defendants dispute that Plaintiff is (A) disabled; and (B) that she experienced adverse employment actions caused by her disability. Each are discussed below.

### A.   Plaintiff is Disabled Under the ADA

To establish a disability under the ADA, Plaintiff must show that (i) she suffers from a physical or mental impairment; (ii) the claimed impairment affects a specific activity that constitutes a "major life activity;" and (iii) the impairment "substantially limits" the major life

activity identified. <u>Sussle v. Sirina Protection Sys. Corp.</u>, 269 F. Supp. 2d 285, 297 (S.D.N.Y. 2003). To determine whether these requirements have been met, a court must engage in an "individualized and fact-specific" inquiry. <u>Colwell v. Suffolk County Police Dep't.</u>, 158 F.3d 635, 643 (2d Cir.1998). The Supreme Court recently noted the changes applied by the ADA Amendments Act of 2008 ("ADAAA") concerning ADA disability:

> Under the ADA, as amended by the ADAAA, the definition of "disability" is construed in "favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). The Act defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individuals; (B) a record of such an impairment; or (C) being regarded as having such an impairment." <u>Id</u>. § 12102(1). The ADAAA expanded the interpretation of the ADA's three-category definition of "disability." For example, "major life activity" includes "caring for oneself, performing manual tasks...walking, standing, lifting, bending, speaking, breathing...and working," as well as "the operation of a major bodily function," including "neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Pub.L. No. 110-325, 122 Stat. 3553, 3555 (2008).

<u>Young v. United Parcel Service, Inc.</u>, 135 S. Ct. 1338, 1348 (2015) (internal citations omitted). Thus, the ADAAA significantly expanded "disability" under the ADA. <u>See also</u> 42 U.S.C. § 12101 note (2008) (Findings and Purposes) (noting effect and purpose of amendment was to broaden ADA coverage which had been improperly narrowed by the courts); 29 C.F.R. §1630.1(c)(4) ("The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA.") Plaintiff suffered from substantial limitations on multiple major life activities, as discussed below. (Decl. O'Hara ¶ 4-8) At a minimum, this is an issue of fact for a jury to assess.

### 1.    Gastrointestinal Functions

A major life activity includes "the operation of a major bodily function, including…[the] bladder." 29 C.F.R. § 1630.2 (i)(1)(ii). Courts have held that frequent urination and similar bladder impairments may constitute a substantial impairment of that major life activity. <u>See</u>, <u>e.g.</u>, <u>Fasan v.</u>

McRoberts Protective Agency, Inc., 2015 U.S. Dist. LEXIS 35158, at *11 (E.D.N.Y. 2015) (Plaintiff did not allege that frequent urination caused by her diabetes constituted a substantial limitation, but court opined that "frequent urination, under more drastic circumstances than found here, could potentially qualify as a disability under the ADA"); Hamm v. Farney, 2014 U.S. Dist. LEXIS 119883, at *8 (N.D.N.Y. 2014) (holding enlarged prostate which caused frequent restroom visits substantially limited a major life activity).

Courts have also held that incontinence may constitute a substantial limitation of a major life activity. Workman v. Frito-Lay, Inc., 165 F.3d 460, 467 (6th Cir. 1999). At least one court has further implied that under the ADAAA, incontinence is a disability. See Guardino v. Vill. of Scarsdale Police Dep't, 815 F. Supp. 2d 643, 647 (S.D.N.Y. 2011) (holding that incontinence does not support a disability claim under the ADA, but specifically noting the court's analysis was based on pre-ADAAA standards). Additionally, New York Federal Courts have recently found specifically that there is a genuine issue of material fact whether IBS is a disability within the meaning of the ADA. See Schmitt v. City of New York, 2018 U.S. Dist. LEXIS 187382, at *21 (E.D.N.Y. 2018) (Defendant's summary judgment motion denied where material issue of fact exists concerning whether IBS is disability under the ADA).

Here, due to gastrointestinal conditions of GERD and IBS, Plaintiff experienced immediate urgency concerning continence, often being subjected to constant bathroom visits, and excruciating abdominal pain. (Decl. O'Hara ¶ 6-7, 10).  This caused her to experience disabling physical impairments. (Decl. O'Hara ¶ 6). As a result, Plaintiff's life was impaired. (Decl. O'Hara ¶ 6-8). In sum, the gastrointestinal distress and incontinence caused by Plaintiff's gastrointestinal disorders of GERD and IBS constituted a substantial impairment to a major life activity, and therefore Plaintiff is disabled under the ADA. At a minimum, this is a triable issue.

2.      **Interacting with others and ability to work**

Interacting with others is a major life activity. 29 C.F.R. § 1630.2 (i)(1)(i). Courts have held that a limited ability to socialize with others may constitute a substantial impairment of that major life activity. Glaser v. Gap Inc., 994 F. Supp. 2d 569, 573 (S.D.N.Y. 2014). Here, Plaintiff was unable to normally socialize with others as a result of her incontinence and her need to use the bathroom constantly, as well as her complications caused by inability to sleep due to her stomach pain and gastrointestinal distress. (Decl. O'Hara ¶ 6, 8). Following her constructive discharge from SWBOCES, Plaintiff was physically and emotionally devastated, and literally could not bring herself to seek employment for a lengthy period of approximately six (6) months, and experienced significant economic harm. (Decl. O'Hara ¶ 23-24). Thus, the impairment of Plaintiff's inability to interact with others constituted a substantial impairment to a major life activity, and therefore Plaintiff is disabled under the ADA, or so a jury could infer.

3.      **Sleeping**

Sleeping is a major life activity. 29 C.F.R. § 1630.2 (i)(1)(i). Courts have held that insomnia may constitute a substantial impairment of that major life activity. See, e.g., Felix v. N.Y. City Transit Auth., 154 F. Supp. 2d 640, 654 (S.D.N.Y. 2001) (holding Plaintiff's inability to sleep was a substantial limitation of a major life activity); Knorr v. Pepsico Food Servs., Inc., 1999 U.S. Dist. LEXIS 4829, at *32 (N.D.N.Y. 1999). Here, Plaintiff's extreme stomach pain rendered sleeping extremely difficult, and she was often sleep-deprived due to being awake throughout the night. (Decl. O'Hara ¶ 6). Thus, the insomnia caused by Plaintiff's gastrointestinal disorders and other disabling conditions constituted a substantial impairment to a major life activity, and therefore Plaintiff is disabled under the ADA, or so a jury could infer.

**B.** **Plaintiff Experienced Adverse Actions Giving Rise to an Inference of Discrimination**

"A Plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003). As a result of the SWBOCES's discriminatory actions, Plaintiff has sustained significant financial damage, as well as workplace-related stress and anxiety. (Decl. O'Hara ¶ 23-24).

**1.** **Adverse Actions**

Limiting the factual scope of the harassment experienced by Plaintiff for the purposes of the applicable statutory period of 300 days prior to the filing of Plaintiff's NYSDHR charge provides for a window occurring prior to the terminating events of Plaintiff's employment with SWBOCES. Plaintiff was medical leave of absence from on or around April 19, 2016, and continuing through June 13, 2016. Immediately upon her return from medical leave, Plaintiff experienced heightened, and wholly unnecessary scrutiny from Schuchman, her supervisor, seemingly for the exclusive purpose of harassing Plaintiff. (SAC ¶ 104-106). Notably, observations by Schuchman were threatened to take place on a daily basis. (SAC ¶ 110). Upon her return, Plaintiff sought to bring legal representation to meetings with SWBOCES counsel, and was denied. (SAC ¶ 107-108). On June 22, 2016, Plaintiff resigned her tenured position, and identified workplace harassment and retaliation as motivation. (SAC ¶ 113). Even after taking a conclusory position ending employment, Plaintiff continued to experience discipline, when she was written

13

up and issued another and backdated Counseling Memorandum on the final school day. (SAC ¶ 114-115; Decl. O'Hara Exs. 1, 4-5). Plaintiff experienced economic injury from her job loss, and then, was denied applicable retroactive pay, which again inflicted financial harm to Plaintiff. (SAC ¶ 117, 119, 121). This Court has found that a constructive discharge may be inferred when an employer threatens an employee with termination, suggests that she resign or retire, demotes her by changing her job title and responsibilities for a non-business related reason, or reduces her salary or benefits. Riedinger v. D'Amicantino, 974 F. Supp. 322, 330 (S.D.N.Y. 1997). See also Dortz v. City of New York, 904 F. Supp. 127, 159 (S.D.N.Y. 1995) ("When an employee who has suffered from discriminatory conduct is required to engage in daily dealings with her alleged wrongdoer, she may suffer an aggravated sense of humiliation giving rise to a constructive discharge.") (internal quotation omitted). Here, Plaintiff was repeatedly forced to engage, and threatened to be engaged with, the very parties she had complained about, including by filing formal complaints of workplace harassment, on a daily basis. (SAC ¶ 72,78-80, 85-89, 90-91; Decl. O'Hara Ex. 2). Additionally, Plaintiff was threatened with disciplinary proceedings, and had previously been threatened with disciplinary charges which would seek termination of her tenured employment and potentially jeopardize her licensure as an educator, based on her repeated complaints, as her performance was otherwise unimpeachable (SAC 47; Decl. O'Hara ¶ 14-24).

    **2.**    **Inference of Discrimination**

Direct evidence proving whether Plaintiff's disabilities caused the employment action is difficult to find because those who discriminate often deliberately try to conceal their discriminatory intent. Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994). Moreover, discriminatory intent will rarely be demonstrated by "smoking gun" proof. Rather, in most discrimination cases direct evidence of the employer's motivation is unavailable. Dister v.

Continental Group, Inc., 859 F.2d 1108, 1112 (2d Cir. 1988). Accordingly, the Plaintiff need not allege direct evidence to demonstrate that her disabilities caused the adverse employment actions. See Maresco v. Evans Chemetics, 964 F.2d 106, 110 (2d Cir. 1992).

There are many different ways to prove discriminatory motive. The most common way of proving discrimination is to show preferential treatment was given to employees outside the protected class. Mandel v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003); Abdu Brinson v. Delta Airlines Inc., 239 F.2d 456, 468 (2d Cir. 2001). Evidence of a discriminatory motive can be established by demonstrating that the reasons given for a particular action were pretextual. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000). These factors, among others, that may be considered in determining whether Plaintiff's disabilities caused the adverse decisions. The inquiry is not limited to the aforementioned factors; instead, courts must consider the working environment as a whole. Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000).

### i.     Discriminatory Comments

In addition to alleging a discriminatory practice, Plaintiff has alleged specific and discriminatory comments made by and concerning SWBOCES decision makers. During the 2015/16 School Year, Plaintiff's health and absences were the topic of conversations among supervisors, occurring during the scope of weekly meetings of SWBOCES principals, and that in the presence of John Knight, as well as James Gratto, Plaintiff's mental state, absences, her taking of medical leave, and the alleged hardships relating to these issues were discussed.[4] (Decl. O'Hara ¶ 21). Without access to documentary and testimonial discovery, corroborative evidence may otherwise be barred from Plaintiff's access.

---

[4] Deposition testimony of witnesses, including non-party witnesses, such as SWBOCES School Administrator and Principal Jeanne Graham, may corroborate these disclosures, which indicate a discriminatory animus and basis and motivating interest for retaliatory actions.

### ii.    Disparate Treatment

Preferential treatment given to individuals outside a Plaintiff's protected class is a widely accepted method for establishing a *prima facie* case of discrimination. Mandell v. County of Suffolk & John Gallagher, 316 F.3d 368, 378 (2d Cir. 2003)). Unlike Plaintiff's non-disabled comparators, and those who had not voiced repeated opposition to workplace misconduct which can be interpreted by a reasonable jury to be opposition to a hostile work environment, and harassment causing impacts on Plaintiff's health and need for the accommodation of a medical leave of absence, Plaintiff experienced: 1) heightened scrutiny from her supervisor (SAC ¶ 104-106), 2) daily observation threats from her supervisor (SAC ¶ 110), 3) delay in review of her workplace complaints and denial of counsel (SAC ¶ 107-108), and 4) constructive discharge of her position and resulting economic damages (SAC ¶ 113, Decl. O'Hara ¶ 22-24).

## II.    PLAINTIFF'S ADA and ADA HOSTILE WORK ENVIRONMENT CLAIMS

To state a *prima facie* hostile work environment claim under the ADA, a plaintiff must show "that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." Acheampong v. N. Y. City Health & Hosps. Corp., 2015 U.S. Dist. LEXIS 37933, at *42-43 (S.D.N.Y. 2015) (citing Tanvir v. New York City Health & Hospitals Corp., 480 F. App'x 620, 622 (2d Cir. 2012).

To meet the "severe or pervasive" standard, the conduct must be evaluated in terms of whether a reasonable person (objective), who is subjected to the same type of inappropriate conduct, would perceive the working conditions as so "severe or pervasive" as to create an altered work environment, and that the plaintiff perceived it as such (subjective). See Harris v. Forklift Sys., 510 U.S. 17, 20 (1993); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 69 (1986). Whether

a reasonable person would find a work environment to be hostile requires an assessment of the totality of the circumstances, including considerations such as: "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 319 (2d Cir. 1999). In Cruz v. Coach Stores, Inc., 202 F.3d 560 (2d Cir. 2000), the court explained that a:

> plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment. Determining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances.

Id. at 570 (citations omitted). Here, Plaintiff contends that she was subjected to a hostile work environment based upon her disabilities and/or based on a retaliatory animus, with such acts characterized, as limited by the applicable statutory window, in Section I(B)(1) and I(B)(2) herein.

A reasonable jury could find the foregoing comments and acts were severe and pervasive, having occurred due to a discriminatory or retaliatory animus toward Plaintiff. See Breeding v. Cendant Corp., 2003 U.S. Dist. LEXIS 6558, at *5 (S.D.N.Y. 2003) ("[J]ury could conclude that supervisor's comments, which were all made in front of [plaintiff's] colleagues and subordinates, and ranged from tasteless to cruel and humiliating, created a hostile work environment").

Additionally, the comments made by supervisors concerning Plaintiff's mental state and sick days, occurring behind Plaintiff's back also contributed to the hostile work environment. See Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) (noting that "learn[ing] second-hand of a…derogatory comment or joke by a fellow employee or supervisor can also impact the work environment," and holding that "the mere fact that [a plaintiff] was not present when a…derogatory comment was made will not render that comment irrelevant to his hostile work

environment claim"); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000) (finding that the district court erred in ruling that statements uttered outside plaintiff's presence had no probative value); Torres v. Pisano, 116 F.3d 625, 633 (2d Cir. 1997) ("[A]n employee who knows that her boss is saying [derogatory remarks] behind her back may reasonably find her working environment hostile."). Thus, the above conduct was severe and pervasive, or at least there are issues of fact regarding same. A jury could infer that comments by or known to SWBOCES administrators concerning Plaintiff's medical conditions and use of sick leave relates to Defendants' perception that Plaintiff took too much sick time relating to her medical conditions and/or is disabled, and thus is directly related to her disability and/or a retaliatory animus.

## III.    PLAINTIFF'S RETALIATION CLAIMS SHOULD NOT BE DISMISSED

To state a prima facie case of retaliation, a Plaintiff must show that: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." Summa v. Hofstra University, 703 F.3d 115, 125 (2d Cir. 2013). Plaintiff refers this analysis to the prior discussion in Section I(B)(1) and I(B)(2) above, which reflects the protected activities which took place, Defendants' knowledge of them, and the resulting adverse actions. Thus, issues of fact regarding retaliation exist.

Moreover, in the context of a retaliation claim, Plaintiff is protected under the ADA even if her medical condition does not constitute a disability. "Courts have generally recognized that non-disabled individuals who request reasonable accommodations are protected against retaliation, provided the request was made in good faith." Keating v. Gaffney, 182 F. Supp. 2d 278 (E.D.N.Y., 2001) (citing, Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 244, 233 (2d Cir. 2000); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)).  Here, Plaintiff

made a good faith request for accommodation by way of asking for, and receiving, a lengthy and required medical leave from employment, as a result of physical manifestations of her conditions which could not be rectified even with medication and treatment. (SAC ¶ 95-105, Decl. O'Hara Ex. 6) Accordingly, Plaintiff cannot be subjected to retaliation as a result of her accommodation request, even if Plaintiff is determined not to be disabled under the ADA.

### A.   Plaintiff's Retaliation Claims Subject to Title VII

Defendants argue that Plaintiff did not engage in protected acts relating to Title VII. However, "the anti-retaliation provision of Title VII has a broad reach," and here, Plaintiff "engaged in conduct by first informally and then formally objecting to [her] treatment at the hands of [her] employers. See Birkholz v. City of New York, 2012 WL 580522 (E.D.N.Y. 2012). Thus, even if Plaintiff did not specifically complain about a specific form of discrimination, she took action which constituted a protected activity under Title VII by repeatedly complaining about workplace harassment and bullying, including in complaints made to the District's Title IX Officer and other District actors required to provide assistance. (SAC ¶ 72, 73, 80, 81, 83, 85, 88, 92, 100, 107, 111, 112). Here, Plaintiff's allegations pertaining to Title VII are narrowly tailored to the position that Defendants have interpreted complaints to represent protected activity relating to Title VII, and that retaliation experienced thereafter, is at least in part, motivated by the same.

## IV.   PLAINTIFF'S CONSTITUTIONAL CLAIMS

### A.   Plaintiff's Claims Under Section 1983 via the 14th Amendment

To state a claim under Section 1983, a Plaintiff must allege (1) that the challenged conduct was committed by a person acting under color of state law, and (2) that such conduct deprived the Plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010); Grant v. N.Y. State Office for People

with Developmental Disabilities, 2013 U.S. Dist. LEXIS 107565, *32 (E.D.N.Y. July 30, 2013).

Plaintiff has plausibly alleged such actions.

Section 1983 claims brought in a New York Federal Court are subject to a three-year statute

of limitations. See Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004); see also

Myers v. Camden Cent. Sch. Dist., 2012 U.S. Dist. LEXIS 99127, *25 (N.D.N.Y July 17, 2012)

(citing Baroor v. New York City Dept. of Educ., 2009 U.S. Dist. LEXIS 29319 (E.D.N.Y. Apr. 3,

2009)). While it is true that "Section 1983 is not itself a source of substantive rights," a Plaintiff

effectively pleads a 1983 claim by attaching it to a separate constitutional violation, such as a

Fourteen Amendment equal protection claim. Barella v. Vill. of Freeport, 16 F. Supp. 3d 144, 157-

158, (E.D.N.Y. 2014) (42. U.S.C. 1981).

### 1. Adverse Actions Occurring Under the Expanded Statutory Period

In addition to the adverse actions occurring as alleged in Section I(B)(1) of this

memorandum, Plaintiff experienced additional bad acts beginning in the Fall of the 2015/16

School Year. First, Plaintiff was subjected to an involuntary transfer, and sent to the workplace

where she had previously sustained repeated injuries from student attacks, including broken bones,

and concussions. (SAC ¶ 30-32; 44). Following her complaints of workplace harassment, Plaintiff

was issued repeated Counseling Memoranda, including on March 4, 2016, as well as April 12,

2016, with the latter disciplinary letter being issued due to the taking of sick leave for a known

medical procedure (endoscopy). (SAC ¶ 73-74, 87, 89-90).

### B. Plaintiff's Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment requires the government

to treat all similarly situated individuals alike. Ferreira v. Town of E. Hampton, 2014 WL

5637882, at *18 (E.D.N.Y. Nov. 4, 2014). Plaintiff has stated Equal Protection claims under

42 U.S.C. § 1983, as she has sufficiently pled that she was treated differently from her similarly situated non-disabled employees. See Fierro v. New York City Dep't of Educ., 994 F. Supp. 2d 581, 591 (S.D.N.Y. 2014), appeal dismissed (Apr. 9, 2014) ("Equal Protection Clause requires that the government treat all similarly situated people alike.").

Notably, the Second Circuit has found that disability discrimination matters may be pursued pursuant to § 1983. See Rogers v. Roosevelt Union Free Sch. Dist., 2012 WL 6163130, at *9 (E.D.N.Y. Dec. 7, 2012) aff'd, 553 F. App'x 88 (2d Cir. 2014). (deciding disability discrimination claims brought under § 1983 on the merits); Negron v. City of New York, 2011 WL 4737068, at *15 (E.D.N.Y. Sept. 14, 2011) report and recommendation adopted, 2011 WL 4729754 (E.D.N.Y. Oct. 6, 2011); Graham v. Watertown City Sch. Dist., 2011 WL 1344149, at *4-5 (N.D.N.Y. Apr.8, 2011) (finding that public employee alleging disability discrimination "states a class-based equal protection claim, not a class-of-one claim"). Additionally, Courts have applied a rational basis review in analyzing claims based on disability discrimination, rather than under a "class of one". Davis v. New York State Office of Mental Health, 2009 WL 5178440, at *13 (E.D.N.Y. Dec. 31, 2009) (opining that "the Equal Protection Clause permits distinctions which are based on a person's disability, if they are rational and serve a legitimate end."); see also O'Neill, 2009 WL 860647, at *7 (stating that "where disability discrimination is at issue, the Fourteenth Amendment only proscribes government conduct for which there is no rational relationship between the disparity of treatment and some legitimate governmental purpose."). As such, Plaintiff's § 1983 disability claims are actionable, and Defendants' motion to dismiss should be denied in this respect.

### C.    Plaintiff's Due Process Claims

Plaintiff's constructive discharge claim inherently creates a property right for which she is entitled to a hearing pursuant to Section 3020-a of the Education Law. Plaintiff's allegations of denial of due process similarly track the Riedenger plaintiff, creating issue as to "whether a reasonable person might find this environment so unpleasant and difficult that she would feel compelled to resign is a factual question properly left for trial." See Riedinger v. D'Amicantino, 974 F. Supp. 322, 330-31 (S.D.N.Y. 1997)(citing Dortz v. City of New York, 904 F. Supp. 127, 159 (S.D.N.Y. 1995). Additionally, because the alleged harassment and retaliation continued despite her complaints to and about her supervisors and administration, a jury could determine that defendants did not and would never address her concerns. Id.

### D.    Plaintiff's Monell Claims Should Not Be Dismissed

Pursuant to 42 U.S.C. § 1983 ("§ 1983"), a Monell plaintiff must establish that the violation of constitutional rights was committed pursuant to a custom, policy or practice which has the force of law. See Monell v. Department of Soc. Serv. of the City of New York, 436 U.S. 658, 691-92 (1978). This custom, policy or practice need not be contained in an explicitly adopted rule or regulation and does not have to receive approval through the body's official decision-making channel. Sorlucco v. New York City Police Department, 971 F.2d 864, 870 (2d Cir. 1992). Indeed, a custom, policy or practice can exist if carried out by the policymakers themselves, other high-ranking officials or even subordinate employees. See Id., (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 168 (1970)).

Monell liability may be based on an employer's failure to act. Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir. 2007). "Where, as here, a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and

circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution." <u>City of Canton v. Harris</u>, 489 U.S. 378, 394-95 (1989) (O'Connor, J., concurring in part and dissenting in part). Plaintiff's repeated complaints about discrimination, and SWBOCES officials continued failure to take any action in response thereto, establishes the SWBOCES and Individual Defendants' "policy of inaction." A reasonable jury may find the District liable because the Superintendent, acting as a SWBOCES official in the administration and management of the District, and direction of the District's administration and personnel, engaged in a practice of failure to supervise, and failure to take corrective action and investigate Plaintiff's repeated complaints, despite a statutory obligation to do so, amounted to "deliberate indifference" to Plaintiff's constitutionally-protected rights, causing deprivation of Plaintiff's liberty and other constitutional rights when the District caused Plaintiff's constructive discharge, meriting discovery.

## V.      THE INDIVIDUAL DEFENDANTS ARE LIABLE

### A.   The Individual Defendants are Not Protected by Immunity

Officials are protected by qualified immunity "so long as their conduct does not violate a clearly established statutory or constitutional right." <u>Richardson v. Selsky</u>, 5 F.3d 616, 621 (2d Cir. 1993) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818-19 (1982)). Here, issues of fact exist as to whether the Individual Defendants possessed a discriminatory animus in rendering the employment decisions leading to Plaintiff's adverse employment actions, in failure to investigate subject to the SWBOCES own polices. (SAC ¶ 124)."[T]here is little debate that a state employee has a clearly established constitutional right under the equal protection clause to be protected against discrimination and retaliation." <u>Jamison v. Chapman</u>, 2009 U.S. Dist. LEXIS 104059, at *47 (N.D.N.Y. 2009); <u>DiLegge v. Gleason</u>, 131 F. Supp. 2d 520, 522 (S.D.N.Y. 2001) ("The right

to be free from discrimination in employment…is well established, both by Title VII, and, with respect to state actors, under 42 U.S.C. § 1983, as is the right to be free from retaliation . . . . If discrimination or retaliation played a substantial part in the employment decisions, Defendants' conduct could not be characterized as objectively reasonable. Accordingly, this case may not be resolved on the basis of qualified immunity.").

Officials are entitled to federal qualified immunity when, while performing a discretionary function, he "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Liu v. New York City Police Dept., 216 A.D.2d 67, 68 (1st Dept. 1995); Wilson v. Layne, 526 U.S. 603, 614 (1999). For these protections to apply, the official must have had an objectively reasonable belief that his conduct violated no clearly established right, Kravitz v. Police Dept. of City of Hudson, 285 A.D.2d 716, 718 (3d Dept. 2001); see Cavanaugh v. Doherty, 243 A.D.2d 92, 97 (3d Dept. 1998), and that "the conduct complained of falls within the scope of his [] official duties." Kravitz, 285 A.D.2d at 718. The federal standard only looks at an official's conduct objectively Norton v. Town of Islip, 04-CV-3079, 2013 WL 84896, *5 (E.D.N.Y. Jan. 7, 2013) (citing Lore v. City of Syracuse, 670 F.3d 127, 166 (2d Cir. 2012) (internal quotations omitted). However, there is no immunity under either standard.

### 1.  The Defendants' conduct was not objectively reasonable

The federal qualified immunity standard shields an official's conduct from liability where "officials of reasonable competence could disagree on the legality of the actions at issue in the particular factual context." Norton v. Town of Islip, 378 Fed. Appx. 85, 88 (2d Cir. 2010) (internal quotation marks and alterations omitted). "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual questions must be resolved

by the fact finder." <u>Kerman v. City of New York</u>, 374 F.3d 93, 109 (2d Cir. 2004) (citations omitted). Here, a reasonable juror may find that Plaintiff's termination event was predicated by harassment motivated by her protected class statuses.

**2.   The Defendants' conduct was not subjectively reasonable**

Under New York Law, qualified immunity does not shield bad-faith conduct. <u>Arteaga v. State of New York</u>, 72 N.Y.2d 212, 216 (N.Y. 1988). The subjective prong "makes qualified immunity entirely unavailable if there are undisturbed findings of bad faith." <u>Norton</u>, 2013 WL 84896, at *5 (quoting <u>Lore</u>, 670 F.3d at 166 (internal quotations omitted)). The party asserting qualified immunity must disprove bad faith by a preponderance of the evidence, "which is a fact-intensive question best resolved by a jury." <u>Id</u>. (citing <u>Lore</u>, 670 F.3d at 167). <u>See, e.g.</u>, <u>Rosen v. City of New York</u>, 667 F.Supp.2d 355, 363 (S.D.N.Y. 2009). Based on the history of complaints, and Defendants failures to act according to SWBOCES polices, a jury could find bad faith.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests an order denying Defendants' motion to dismiss the SAC.

Dated: Carle Place, New York
           August 23, 2019

                                                    Respectfully submitted,
                                                    LEEDS BROWN LAW, P.C.

                                    By:   _____/s/_____
                                                    SEAN O'HARA